James Jonathan MAPP et al., Plaintiffs-Appellees,

v.

BOARD OF EDUCATION OF the CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE et al., Defendants-Appellants.

Nos. 14444, 14517.

United States Court of Appeals Sixth Circuit.

Nov. 13, 1961.

Raymond B. Witt, Jr., Chattanooga, Tenn., for defendants-appellants, Witt, Gaither, Abernathy, Caldwell & Wilson, Chattanooga, Tenn., on the brief.

James M. Nabrit, III, New York City, for plaintiffs-appellees, Z. Alexander Looby, Avon Williams, Jr., Nashville, Tenn., Thurgood Marshall, Constance Baker Motley, New York City, on the brief.

Before MILLER, Chief Judge, and WEICK and O'SULLIVAN, Circuit Judges.

PER CURIAM.

These two appeals are from orders of the District Court entered in a proceeding to compel racial desegregation of the public schools in Chattanooga, Tennessee.

In the first appeal, No. 14,444, it is contended that the District Court erred in granting plaintiff's motion for summary judgment and in ordering the Board of Education to file a plan for desegregation of the schools. The Board did file a plan in compliance with the order of the Court.

In the second appeal, No. 14,517, complaint is made about the order of the District Court which tentatively rejected as insufficient the plan for desegregation filed by the Board of Education and required the Board to file an alternate plan. The Court reserved the right of the Board to a reconsideration of the first plan as it is or as amended. The Board complied with the Court's order and filed an alternate plan which is not involved in these appeals.

There was no genuine dispute over the facts in the first appeal. Admissions were made in the answers filed by the defendants to the complaint and also in depositions taken of the Superintendent of Schools and the members of the Board of Education. It was not controverted that the Board has pursued a policy of operating a biracial school system; that the system was established almost a century ago and has been continued by the members of the present Board. Although more than five years have elapsed since the Supreme Court held racial segregation in the public schools to be a violation of constitutional rights [1] no plan for desegregation had been adopted by the Board until ordered by the Court.

The Board contends that after the second Brown decision it publicly announced its policy of compliance with the decision and engaged in extensive educational activities to elucidate said policy to the people of the community in order to bring about public acceptance of desegregation. It claims that these activities constituted the first step in its plan of implementation of said policy. It asserts that it had not adopted any plan for desegregation because the people in the community were not ready for it and would not accept it.

The District Court, in a memorandum opinion, gave careful consideration to these contentions. The Court held that the activities of the Board were not a sufficient start toward compliance with the decisions of the Supreme Court in the two Brown cases and in Cooper v. Aaron, 258 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5; that the reasons advanced by the Board did not constitute any defense to the ac-

---

1. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955).

tion and were not ground for further delay.

 In our opinion, the District Court correctly applied the decisions of the Supreme Court and was fully justified in granting summary judgment.

In appeal No. 14,517, the District Court ruled that the first plan "on its face, is not a minimum or reasonable start to desegregate the school system of Chattanooga with all deliberate speed" as required by the decisions of the Supreme Court and tentatively rejected it.

Under this plan, the first step was the Board's educational activities which the District Court held was not a sufficient start. We are affirming this decision in No. 14,444. Additional steps in the plan provided that desegregation was not to begin until the 1962–1963 school year and then only with respect to grades one, two and three of "selected schools." The fourth grade of the selected schools would be desegregated in September 1963, fifth grade in September 1964 and so on until each grade in the selected schools is desegregated. The plan did not disclose the number of schools to be selected for desegregation or the reasons for the selection. It provided for desegregation in other schools after the 1962–1963 school year according to plans to be submitted by the Board and approved by the District Court, but was silent on the manner or time of selection and was also indefinite as to other special programs for desegregation mentioned therein.

The plan further provided for the establishment of single school zones based upon location and size of school buildings and school population without regard to race and that in the transition from the existing zones to single zones children may continue to attend the schools to which they were assigned under existing Board policy. This meant that the children could remain where they were until all grades have been desegregated in all the schools. The plan was indefinite as to when desegregation would take place in all of the schools.

The plan gave parents an election to have their children remain in segregated schools or attend a desegregated school by giving written notice to the Board before a certain date.

It further provided for the transfer of students in desegregated schools upon showing good cause and one reason regarded as good cause is "(a) When a student would otherwise be required to attend a school where the majority of students in that school or in his class are of a different race."

 In our opinion, the order of the District Court tentatively rejecting the first plan and requiring the filing of an alternate one was within the discretion of the Judge to make and we do not find that there has been any abuse of discretion.

The judgment in each case is affirmed.