Jennifer R. TURNER et al., Plaintiffs,

v.

COUNTY SCHOOL BOARD OF GOOCH-LAND COUNTY, VIRGINIA et al., Defendants.

Civ. A. No. 4343.

United States District Court
E. D. Virginia,
Richmond Division.

Jan. 27, 1966.

S. W. Tucker, Henry L. Marsh, III, Willard H. Douglas, Jr., Richmond, Va., Jack Greenberg, James M. Nabrit, III, New York City, for plaintiffs.

John S. Battle, Jr., Battle, Neal, Harris, Minor & Williams, Richmond, Va., for defendants.

BUTZNER, District Judge.

The plaintiffs, who are pupils or prospective pupils and their parents or guardians, instituted this class action seeking an injunction requiring the defendants to adopt and implement a plan which will provide for the prompt and efficient elimination of racial segregation in the public schools of Goochland County. They also ask for an injunction restraining the defendants from building schools or additions and from purchasing school sites pending the court's approval of a plan. The plaintiffs seek costs and attorneys fees.

The defendants answered generally denying the material allegations of the complaint and stating that they have complied with Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.

Goochland County is a rural county on the north side of the James River west of Richmond and Henrico County. Population in the eastern end of the county is rapidly growing. Negro and white families are generally scattered throughout the county, although there are several small areas where one race or the other is predominant.

Eleven hundred Negro pupils and nine hundred white pupils attend the county's schools. One white and one Negro high school serve the entire county. There are two white and three Negro elementary schools. They have no clearly defined attendance zones, although generally they serve the areas adjacent to them.

Since 1956 the county has been under the Virginia Pupil Placement Act, §§ 22–232.1 et seq., Code of Virginia, 1950 as amended. Prior to the 1965–66 school year Negroes had not applied to attend white schools, and the schools were not integrated.

Negro residents of the county sought to have the county adopt a plan to desegregate its schools. Upon failure of the school board to act this suit was instituted. On June 8, 1965, after this action was commenced, the school board approved a plan for the desegregation of the schools in order to comply with Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. The plan was revised on August 10 and was approved by the United States Commissioner of Education on September 10, 1965. Pursuant to the plan, 62 Negro pupils have been transferred to white schools for the 1965–66 school year. There are Negroes in every grade of every white school with the exception of the sixth grade at Goochland Elementary School.

The 1965 pre-school general faculty meeting was held on a desegregated basis. The faculties of the several Negro and white schools are not integrated.

The plan provides:

"I. ANNUAL FREEDOM OF CHOICE OF SCHOOLS

"A. The Goochland County School Board has adopted a policy of freedom of choice of schools according to the schedule set forth below. This policy will be effective beginning with the 1965–66 school year and a new choice must be made once annually thereafter for each student in all grades to which the freedom of choice plan applies.

"B. The choice of schools may be made without regard to race, color, or national origin and is granted to parents, guardians and persons acting as parents (hereafter called parents) and their children. Teachers, principals, and other school personnel are not permitted to advise, recommend, or otherwise influence choices. They are not permitted to favor or penalize children because of choices made.

"II. RATE OF PUPIL DESEGREGATION

"The opportunity to make a choice will be given parents according to the following schedule:

| School Term | Grades Desegregated |
|---|---|
| 1965–66 | 1, 2, 8, 12 |
| 1966–67 | 1, 2, 3, 6, 7, 8, 9, 12 |
| 1967–68 | All grades |

"III. PUPILS ENTERING FIRST GRADE

"Registration for the first grade will take place Monday through Friday be-

tween May 2, 1966 to May 20, 1966 from 9 A.M. to 3 P.M. When registering, the parent must complete a Choice of School Form for the child. The child may be registered at any elementary school in this system and the choice may be made for that school or for any elementary school in the system. The provisions of Section IX of this plan with respect to overcrowding shall apply in the assignment to schools of children entering the first grade.

## "IV. PUPILS ENTERING OTHER GRADES IN WHICH FREEDOM OF CHOICE APPLIES

"A. Each parent of children in these grades will be sent a letter annually explaining the provisions of the plan, together with a Choice of School Form and a self-addressed return envelope, at least 15 days before the date when the form must be returned. Choice forms and copies of the letter to parents will also be readily available to parents or students and the general public at all school offices during regular business hours. Section IX applies.

"B. The Choice of School Form must be either mailed or brought to any school or to the superintendent's office by May 20 each year. Anyone not registering his choice by that date must do so during the pre-school registration period in August or when school opens. However, first preference in choice of schools will be given those whose Choice of School form is returned by the final date for making choice in the regular registration period. Otherwise Section IX applies.

## "V. PUPILS NEWLY ENTERING SCHOOL SYSTEM OR CHANGING RESIDENCE WITHIN IT

"A. Parents of children moving into the area served by this school system or changing their residence within it, after the registration period is completed, but before the opening of the school year will have the same opportunity to chose [sic] their children's school just before school opens on August 24 to August 26 from 9 A.M. to 3 P.M. by completing a Choice of School Form. The child may be registered at any school in the system containing the grade he will enter and the choice must be made for that school or for any other such school in the system. However, first preference in choice of schools will be given to those whose Choice of School Form is returned by the final date for making choice in the regular registration period. Otherwise Section IX applies.

"B. Parents of children moving into the area served by this school system or changing their residence within it after the late registration period referred to above but before the next regular registration period shall have the same opportunity to choose their children's school and under the same conditions as described in V A.

## "VI. ASSIGNMENT OF PUPILS IN GRADES IN WHICH CHOICE IS NOT REQUIRED

"Parents of pupils in all grades not included in the schedule in Section II will be permitted to make a choice under this plan. Such parents or their children may readily obtain transfer forms from any teacher or school office and return them to any school prior to June 1, 1966 for placement in the school of their choice. These requests will not be denied for any reason other than overcrowding.

## "VII. CHANGE OF ASSIGNMENT AFTER ASSIGNMENTS HAVE BEEN MADE

"After a choice has been made and assignment to a school has been made by the Superintendent under this plan, no transfer to any other school during that school year will be permitted except on grounds of change of residence or similar nonracially based considerations.

## "VIII. RESIDENT AND NON-RESIDENT ATTENDANCE

"This system will not accept non-resident students, nor will it make arrangements for resident students to

attend public schools in other school systems where this would tend to preserve segregation or minimize desegregation. Any arrangements made for non-resident students to attend schools in this system, or for resident students to attend schools in another system, will assure that such students will be assigned without regard to race, color, or national origin, and such arrangement will be explained fully in an attachment made a part of this plan.

"IX. OVERCROWDING

"A. No choice will be denied for any reason other than overcrowding. In the case of high school students no choice will be denied. Where a school would become overcrowded if all choices for that school were granted, pupils choosing that school will be assigned so that they may attend the school of their choice nearest to their homes. No preference will be given for prior attendance at the school.

"B. Anyone whose choice is denied because of overcrowding will be required to make another choice from among all other schools in the system where space is available in his grade.

"X. TRANSPORTATION

"Transportation will be provided all pupils in each school on an equal basis without segregation or other discrimination because of race, color or national origin. The right to attend any school in the system will not be restricted by transportation policies or practices. To the maximum extent feasible, busses will be routed to serve each pupil choosing any school in the system. In any event every student eligible for bussing shall be transported to the school of his choice, if he chooses either the formerly white or the formerly Negro school nearest his residence.

"XI. SERVICES, FACILITIES, ACTIVITIES AND PROGRAMS

"There shall be no discrimination based on race, color or national origin with respect to any services, facilities, activities and programs sponsored by or affiliated with the schools of this school system.

"XII. STAFF DESEGREGATION

"A. Teacher and staff desegregation is a necessary part of school desegregation. Steps shall be taken beginning with school year 1965–66 toward elimination of segregation of teaching and staff personnel based on race, color, or national origin, including joint faculty meetings, in-service programs, workshops, other professional meetings and other steps as set forth in Attachment C.

"B. The race, color, or national origin of pupils will not be a factor in the initial assignment to a particular school or within a school of teachers, administrators or other employees who serve pupils, beginning in 1966–67.

"C. This school system will not demote or refuse to re-employ principals, teachers, and other staff members who serve pupils, on the basis of race, color, or national origin; this includes any demotion or failure to re-employ staff members because of actual or expected loss of enrollment in a school.

"D. All faculty and staff of this school system during the school year 1964–65 have been re-employed without demotion for the school year 1965–66 except those indicated in attachment D.

"XIII. PUBLICITY AND COMMUNITY PREPARATION

"A. A notice setting forth the provisions of this plan will be published on the front page of the Goochland Gazette, a local newspaper of general circulation, once a week for three consecutive weeks immediately following receipt by the School Board of notice of acceptance of this plan by the United States Commissioner of Education. Copies of this plan will be given to all television stations, radio stations and newspapers serving this school division and they will be asked to give conspicuous coverage to it as part of

the local news. Copies will also be available to all interested citizens. All aspects of this plan have been or will be followed as scheduled for 1965–66 and will be followed annually thereafter. ·

"B. Steps have already been taken to prepare the community for desegregation at meetings of patrons, faculty, and pupils. Explanations and discussions of the desegration plan will also be held for such groups during the coming year."

The plaintiffs attack the plan because it does not assign pupils on the basis of geographical zones and because it does not integrate the staff.

The plaintiffs request that the defendants be restrained from proceeding with the construction of new school buildings and additions or purchasing new school sites until an adequate plan has been adopted. In September 1963 the seventh grade at a Negro elementary school, Randolph, was assigned to Central Elementary, another Negro school, to relieve overcrowding at Randolph. The next year another grade was transferred. The school board now plans an addition at Randolph. Apparently construction has not begun.

In Wright v. County School Board of Greensville County, Va., 252 F.Supp. 378 (E.D.Va.1966), decided this day, the court discussed the principles and the authorities which govern this case. This discussion need not be repeated in this opinion. For the reasons stated in the *Greensville County* case, the court concludes:

1. The lack of assignment by geographical zones does not invalidate the plan;

2. The plan is defective because its provisions for staff desegregation are too limited. The board will be allowed ninety days to submit amendments to its plan dealing with staff assignment and practices;

3. The court will not enjoin new school construction or the purchase of school sites. The effect of construction after it is completed can be reviewed and the plan modified, if necessary, to insure that construction is not used to perpetuate segregation.

The plaintiffs' motion for the allowance of counsel fees will be denied.