Stephanie V. THOMPSON et al.,
Plaintiffs,

v.

COUNTY SCHOOL BOARD OF HAN-
OVER COUNTY, VIRGINIA
et al., Defendants.

Civ. A. No. 4274.

United States District Court
E. D. Virginia,
Richmond Division.

Jan. 27, 1966.

S. W. Tucker, Henry L. Marsh, III, Willard H. Douglas, Jr., Richmond, Va., Jack Greenberg, James M. Nabrit, III, New York City, for plaintiffs.

Andrew J. Ellis, Jr., Campbell & Ellis, Ashland, Va., John F. Kay, Jr., Denny, Valentine & Davenport, Richmond, Va., for defendants.

BUTZNER, District Judge.

The infant plaintiffs, as pupils or prospective pupils, in the public schools of Hanover County and their parents or guardians have brought this class action asking that the defendants be required to adopt and implement a plan which will provide for the prompt and efficient racial desegregation of the county schools, and that the defendants be enjoined from building schools or additions and from purchasing school sites pending the court's approval of a plan. The plaintiffs also seek attorneys' fees and costs.

The defendants have moved to dismiss the complaint of the infant plaintiffs on the ground that it fails to state a claim upon which relief can be granted and to dismiss the complaint of the adult plaintiffs on the grounds that the complaint fails to state a claim and the amount in controversy is less than $10,000.00. The defendants also have answered denying material allegations of the complaint.

Hanover is a rural county north of Richmond, Virginia. It has large suburban developments and its population is growing. Negro and white families are generally scattered throughout the county.

There are approximately 7,400 pupils enrolled in the county schools. Two-thirds of them are white and one-third are Negro. The school system has one Negro and two white high schools. There are ten white and three Negro elementary schools.

Pupil assignments are based on dual attendance areas. The county has assigned pupils under the Virginia Pupil Placement Act, §§ 22–232.1 et seq. Code of Virginia, 1950. For the 1963–64 school term ten Negro pupils were assigned to white schools. In 1964–65 an additional eighteen pupils were assigned. In 1965–66 twenty-one Negro pupils attended white elementary schools and twenty-nine Negro pupils attended white

high schools. There are six white elementary schools that have no Negro pupils. These schools serve attendance areas overlapping Negro attendance areas.

The faculty has not been integrated. In April 1964, Negro citizens of the county asked the school board to adopt a plan that would desegregate the schools. On March 17, 1965, after the board had failed to act upon the request, this action was instituted.

On March 4, 1965, the Hanover County school superintendent notified the State Superintendent of Public Instruction that school officials intended to comply with Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. On June 3, 1965, the county submitted a plan to the Department of Health, Education and Welfare. Two months later the school board adopted a revised plan, which the United States Commissioner of Education approved on September 3, 1965. This plan provides:

"Pre-registration of pupils has been completed for the school year 1965–1966, so this plan provides for pre-registration procedures for the school years subsequent to 1965–1966 and re-registration of any pupil who desires to change the choice already made for 1965–1966.

"1. *Assignment of Children to the Public Schools.*

"(a) *Registration of Children in the First Elementary Grade for 1966-1967 and Subsequent School Years.*

"Pre-registration of pupils planning to enroll in the first grade for the school year 1966–1967 will take place for a period of five days from March 21, 1966, through March 25, 1966. During this period parents or guardians may register their children at any school in the County of their choice in which the first grade is taught. At the time of pre-registration a choice may be expressed for any school in the County in which the first grade is taught; however, transportation will be provided by the School Board only to either the nearest formerly Negro school or the nearest formerly white school in which there is place for such pupil. No choice will be denied for any reason other than overcrowding. When a school would become overcrowded if all choices for that school were granted, pupils choosing that school will be assigned so that they may attend the school of their choice nearest to their homes. No preference will be given for prior attendance at the school. Those whose choices are rejected because of overcrowding will be notified and required to make an effective choice of a formerly Negro or formerly white school.

"Children not pre-registered during the period provided therefor as aforesaid may be registered at the school of their choice as above stated between August 15 and August 19, 1966, at the office of the Division Superintendent of Schools, Hanover Avenue, Ashland, Virginia, but first preference in choice of schools will be given to those who pre-registered in the spring period. After a choice has been made and assignment to a school has been made by the Superintendent under this plan, no transfer to any other school during that school year will be permitted except on grounds of change of residence or similar non-racially based considerations.

"Annually after 1966 similar practices will be followed with respect to registering and enrolling pupils for the first grade with the dates for such registration being duly advertised in advance thereof.

"(b) *Pupils Graduating from Elementary Schools for 1966–1967 and Subsequent School Years.*

"All pupils who will graduate from an elementary school to a high school will be furnished by their classroom teachers at least fourteen days prior to April 10, 1966, the appropriate instructions and forms on which their parents or guardians may exercise their choice of the high school to be attended by the pupils. The choice of schools may be made as provided

by Paragraph 1(a) hereof. The form is required to be returned or mailed to the office of the principal of the school then attended by such pupil or to the office of the Division Superintendent on or before April 10, 1966 in order for the pupil to be registered.

"Annually after 1966 similar practices will be followed with respect to registering and enrolling pupils for the first grade of high school.

"(c)   *Lateral Transfers for 1966–1967 and Subsequent School Years.*

"All pupils eligible to continue in the school which they attended during the 1965–1966 school year will be furnished by their classroom teachers at least fourteen days prior to April 10, 1966, the appropriate notice and instructions attached hereto explaining their right to apply for a transfer to another school for the forthcoming year and that the forms on which their parents or guardians may exercise this right of transfer may be obtained in the principal's office of the school then attended by the pupil or at the office of the Division Superintendent of Schools, Hanover Avenue, Ashland, Virginia. The choice of schools may be made as provided by Paragraph 1(a) hereof. The form shall be returned to the office of the principal of the school then attended by such pupil on or before April 10, 1966. Those pupils who fail to exercise their right of transfer by April 10, will be assigned for the 1966–1967 school year to the school they are currently attending.

"Annually after 1966 similar practices will be followed with respect to lateral transfers.

"(d)   *Procedure for Re-registration for 1965–1966 School Year.*

"Pupils who have heretofore been registered or assigned for the 1965–1966 school year will be notified as provided in Paragraph 6 of their right to exercise a choice of schools for the 1965–1966 school year *in accordance with the procedures contained in Paragraphs 1(a), (b) and (c) above.*

"2.   *Initial Assignment of Pupils Moving into the County or Acquiring New Residence in the County.*

"All such pupils shall be initially assigned without regard to race to the school of their choice consistent with the provisions of Paragraph 1 hereof.

"3.   *Choice Under Preceding Paragraphs.*

"The choice which is granted under the preceding paragraphs of this plan is that of the parent or guardian and the child. Teachers, principals and other school personnel are not permitted to advise, recommend or otherwise influence the decision, nor will school personnel either favor or penalize children because of the choice made.

"4.   *Resident and Non-resident Attendance.*

"This system will not accept non-resident students, nor will it make arrangements for resident students to attend schools in other school systems where either such action would tend to preserve segregation or minimize desegregation. Any arrangement made for non-resident students to attend schools in this system, or for resident students to attend schools in another system, will assure that such students will be assigned without regard to race, color, or national origin. There is no such arrangement now in existence in this system, but should such an arrangement be made, it will be submitted as a part hereof.

"5.   *Transportation and Other School Affiliated Services, Facilities, Activities and Programs.*

"Bus transportation will be provided without regard to race to the nearest formerly Negro school or the nearest formerly white school in which there is a place for the pupil seeking transportation and to which he is assigned as herein provided. If a pupil elects to attend a school farther distant from the nearest formerly Negro school or nearest formerly white school in which there is a place for him, no transportation shall be provided.

"All services, facilities, activities and programs affiliated with or sponsored by the school system shall be administered without regard to race, color or national origin.

"6. *Faculty and Administrative Personnel.*

"The School Board is aware that it is the policy of the Department of Health, Education and Welfare to require school systems to remove any racial discrimination that may exist in the assignment of teaching and administrative personnel. Applicants for teaching and administrative assignments will be evaluated on the basis of their overall preparation and qualifications for the position desired, and race will not be a factor in making the evaluation of their qualifications. The school administration will make a thorough study of this situation in light of the recognized policy of the Department of Health, Education and Welfare. Steps will be taken for the desegregation of faculty in the 1965–1966 school year, at least including such actions as joint faculty meetings, joint in-service programs and workshops. Teachers and staff members who serve more than one school, such as librarians, music and art teachers, nurses, counselors will be assigned to serve schools, teachers and pupils without regard to race, color, or national origin.

"This school system will not demote or refuse to re-employ principals, teachers and other staff members who serve pupils on the basis of race, color or national origin; this includes any demotion or failure to re-employ staff members because of actual or expected loss of enrollment in a school.

"7. *Publication and Notice.*

"This plan shall be published in the Herald Progress once a week for two successive weeks after being accepted by the Department of Health, Education and Welfare.

"Notice of the rules and procedures for the assignment and transfer of pupils will be published in the Herald Progress once a week for four weeks beginning with the week of June 6, 1965; will be delivered to all pupils currently enrolled in the school system on or before June 8, 1965; and will be mailed to the parents or guardians of children who will enter the first grade in the forthcoming year on or before June 11, 1965. Forms will be attached to the notices for those children entering the first and eighth grades in the forthcoming year."

The plaintiffs attack the plan for its failure to assign pupils on a geographical basis. They contend that the plan does not satisfy the school board's obligation to eliminate racial segregation from the school system.

The plaintiffs also request that the defendants be restrained from proceeding with the construction of new school buildings and additions or purchasing sites for this purpose.

New construction has been undertaken for additions at Bethany Elementary School for Negro pupils, Elmont School for white pupils and John M. Gandy High School for Negro pupils.

In Wright v. County School Board of Greensville Co., Va., 252 F.Supp. 378 (E.D.Va.1966) decided this day, the court discussed the principles and the authorities which are applicable to this case. This discussion need not be repeated in this opinion. Several additional issues have been raised in this case which were not discussed in the *Greensville* case.

The defendants contend that evidence which shows simply that white schools have white faculties and Negro schools have Negro faculties is not sufficient to establish the invalidity of the plan. The same argument was advanced by the defendants in Kier v. County School Bd. of Augusta County, Va., 249 F.Supp. 239 (W.D.Va.1966). With respect to this contention Judge Michie said:

"I have concluded, however, that where the plaintiffs have shown the existence of segregated faculties the necessity for proof of actual adverse effects on Negro children flowing

therefrom is obviated. While the Supreme Court has not specifically so held, I believe such a rule is fairly implied in the Court's statement that there is no merit in the contention that the relation between faculty segregation and the adequacy of a desegregation plan is 'entirely speculative.' Bradley v. School Bd., supra [382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187].

"Where, as here, the school authorities have chosen to adopt a freedom of choice plan which imposes upon the individual student, or his parent, the duty of choosing in the first instance the school which he will attend (and where the burden of desegregating is imposed upon the individual Negro student or his parents), it is essential that the ground rules of the plan be drawn with meticulous fairness. 'The ideal to which a freedom of choice plan must ultimately aspire, as well as any other desegregation plan, is that school boards will operate "schools," not "Negro schools" or "white schools." ' Brown v. County School Bd., supra, 245 F.Supp. at 560. See Bradley v. School Bd., supra, 345 F.2d at 324 (dissenting opinion). Freedom of choice, in other words, does not mean a choice between a clearly delineated 'Negro school' (having an all-Negro faculty and staff) and a 'white school' (with all-white faculty and staff). School authorities who have heretofore operated dual school systems for Negroes and whites must assume the duty of eliminating the effects of dualism before a freedom of choice plan can be superimposed upon the preexisting situation and approved as a final plan of desegregation. It is not enough to open the previously all-white schools to Negro students who desire to go there while all-Negro schools continue to be maintained as such. Inevitably, Negro children will be encouraged to remain in 'their school,' built for Negroes and maintained for Negroes with all-Negro teachers and administrative personnel. See Bradley v. School Bd., supra, 345 F.2d at 324 (dissenting opinion). This encouragement may be subtle but it is nonetheless discriminatory. The duty rests with the School Board to overcome the discrimination of the past, and the long-established image of the 'Negro school' can be overcome under freedom of choice only by the presence of an integrated faculty."

The transportation policy of the Hanover County plan differs from the Greensville County plan, the Goochland County plan considered this day in Turner v. County School Bd. of Goochland County, Va., (E.D.Va. 252 F.Supp. 578, 1966), and the Richmond City plan considered in Bradley v. School Bd. of the City of Richmond, Va., 345 F.2d 310 (4th Cir. 1965), vacated and remanded on other grounds, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187 (1965). In Hanover County, freedom of choice for all practical purposes is limited to the nearest white school and the nearest Negro school. This retention of a dual school system cannot be approved.

The April 10 cut-off date of the Hanover County plan is unduly restrictive. No sound administrative reason has been advanced for this early cut-off date. The cut-off dates in Richmond, Goochland and Greensville are later and thus afford a pupil a better opportunity to determine which school he will choose for the new year. The cut-off date is even much earlier than that imposed by the Pupil Placement Board.

For the reasons stated in the Greensville County case and for the supplemental reasons stated in this Memorandum, the court concludes:

1. The lack of assignment by geographical zones does not invalidate the plan;

2. The limitations caused by the transportation policy and the cut-off date for registration invalidate the plan;

3. The provisions for staff desegregation are too limited;

4. The board will be allowed ninety days to submit amendments to its plan dealing with staff assignment and prac-

tices, transportation policy and registration dates;

5. The court will not enjoin new school construction or the purchase of school sites. The effect of construction can be reviewed and the plan modified, if necessary, to insure that the construction is not used to perpetuate segregation;

6. The defendant's motion to dismiss will be denied. Cf. Rogers v. Paul, 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265 (1965). In view of the fact that the adult plaintiffs have standing as the parents or guardians of their children, it is unnecessary to consider their standing as taxpayers.

7. The plaintiffs' motion for the allowance of counsel fees will be denied.