James Jonathan **MAPP** and Deborah L'Tanya Mapp, minors, by James R. Mapp, their father and next friend and Pless Maxey, Jr., a minor, by his mother and next friend, Mrs. Josephine Maxey, and Kathy Kirnon, a minor, by her father and next friend, the Reverend H. H. Kirnon, Plaintiffs,

v.

The **BOARD OF EDUCATION OF** the **CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE**, a public body corporate, and Dean Petersen, Chairman of the Board of Education of the city Chattanooga, and George C. Hudson, Sr., Mrs. J. D. Irvine, William D. Leber, Raymond B. Witt, Jr., Corley R. Young and Gordon Kellett, Members of the Board of Education of the City of Chattanooga, and J. W. Letson, Superintendent of Schools of the City of Chattanooga, Tennessee, Defendants.

Civ. A. No. 3564.

United States District Court
E. D. Tennessee, S. D.

Aug. 11, 1967.

Looby & Williams, Nashville, Tenn., Derrick A. Bell, Jr., Jack Greenberg, New York City, William T. Underwood, Chattanooga, Tenn., for plaintiffs.

Raymond B. Witt, Jr., Meacham & Collins, Chattanooga, Tenn., for defendants.

## MEMORANDUM

FRANK W. WILSON, District Judge.

This case is now before the Court upon remand from the Court of Appeals upon the single issue of faculty and supervisory personnel assignment within the defendant school system. Mapp v. Board of Education (Decided February 27, 1967), 6 Cir., 373 F.2d 75. All other matters heretofore ruled on by this Court have been affirmed upon appeal. See 295 F.2d 617 (1961) and 319 F.2d 571 (1963). At the time of the remand there was one other matter pending before the Court. The plaintiffs had filed objections to the last annual report filed herein by the defendant in accordance with the previous orders of the Court. By agreement of the parties, however, these objections were withdrawn from consideration by the Court. Following remand of the case a conference was held upon April 6, 1967, for the purpose of establishing the procedure for hearing and deciding the issue on remand. At this conference it developed that there was a variance of opinion on the part of counsel as to the status of the case upon remand and the issue or issues subject to resolution upon remand. Accordingly, the Court directed the parties to file briefs setting forth their respective positions in this regard and these briefs have now been filed.

It is the position of the plaintiffs that no issue exists with respect to the right of the plaintiffs to attend public schools free of any racial consideration in the assignment of teaching and supervisory personnel and that no issue exists but that the defendants do follow a policy of assigning teachers and supervisory personnel upon the basis of race. The plaintiffs accordingly seek an order by the Court requiring the defendants to submit a plan for immediate disestablishment of racial segregation in the assignment of teaching and supervisory personnel and that the case proceed to a hearing and order thereon.

It is the position of the defendants that upon the present record in this case no issue has ever been joined with respect to the plaintiffs' allegations regarding faculty assignments and that the Court should either order or permit the case to be repled with respect to this issue. It is the plaintiffs' position that the case should then proceed to trial in the usual manner upon all issues

relating to faculty assignment, including the issue of any constitutional right on the part of the plaintiffs to complain of faculty assignment on the basis of race.

With respect to pleading on the issue of faculty assignment, the present status of the case is as follows:

In their original complaint filed April 26, 1960, the plaintiffs included the following allegations:

"The plaintiffs, and members of their class, are injured by the policy of assigning teachers, principals and other school personnel on the basis of the race and color of the person to be assigned. Assignment of school personnel on the basis of race and color is also predicated on the theory that Negro teachers, Negro principals, and other Negro school personnel are inferior to white teachers, white principals and other white school personnel and, therefore, may not teach white children."

Included among the prayers of the original complaint was the prayer that the Court "enter a decree enjoining the defendants, their agents, employees and successors from assigning teachers, principals and other school personnel to the schools of the City of Chattanooga on the basis of race and color of the person to be assigned and on the basis of the race and color of the children attending the school to which the personnel is to be assigned."

On motion of the defendant, these allegations were stricken from the complaint by the Senior Judge of this court by order entered May 5, 1960, on the ground that the plaintiff did not have standing to raise the issue of faculty desegregation. The defendant then filed an answer to the remaining allegations in the complaint. On this state of the pleadings the plaintiff was granted a summary judgment and the defendants were ordered to file a plan of desegregation. The case proceeded to judgment. On appeal the desegregation plan ordered by this Court was approved, but the Court of Appeals restored the plain-

tiff's stricken allegations "insofar as they relate to the assignment of teachers and principals". In restoring the stricken allegations to the complaint, the Court of Appeals stated:

"Within his discretion the District Judge may determine when, if at all, it becomes necessary to give consideration to the question under discussion."

Thereupon this Court directed the parties to submit briefs upon the issue of teacher and principal assignments and after considering the same entered an order upon December 31, 1963, wherein the Court concluded that "There is not cause at this time for modification of previous orders, nor the conducting of further hearings, nor the entry of further orders" upon the issue of teacher and principal assignment.

The matter of teacher and principal assignments was next asserted in connection with a petition filed March 27, 1965, seeking acceleration of the desegregation plan. No responsive pleading was filed to the petition, but a hearing was held upon the petition and an order was entered upon August 11, 1965, accelerating the plan of pupil desegregation but granting additional time for accomplishment of faculty and principal desegregation. Upon appeal this order of the Court was affirmed with respect to all issues other than faculty and principal assignments, and the case was remanded for further proceedings on this issue. Mapp v. Board of Education, 6 Cir., 373 F.2d 75.

Upon this state of the record the defendants contend that the issue of faculty and principal assignment has not been properly pled as yet, that the motion for summary judgment heretofore granted did not go to this issue, and that both issues of fact and law exist as to whether the plaintiffs have any constitutional right to the relief requested.

The defendants contend that the plaintiff must prove that discrimination upon the basis of race in the assignment of faculty and staff is harmful to the class represented by plaintiff before such

practice may be declared unconstitutional. In so contending the defendants rely primarily upon the language of two opinions of the Sixth Circuit Court of Appeals, one rendered in the instant case. In its opinion in this case of July 8, 1963, 319 F.2d 571 at p. 576, the Court of Appeals for this Circuit said the following:

"We agree that the teachers, principals and others are not within the class represented by plaintiffs and that plaintiffs cannot assert or ask protection of some constitutional rights of the teachers and others, not parties to the cause. We, however, read the attack upon the assignment of teachers by race not as seeking to protect rights of such teachers, but as a claim that continued assigning of teaching personnel on a racial basis impairs the students' rights to an education free from any consideration of race. Neither by the first Brown decision, nor by its later decisions has the Supreme Court ruled upon the *question of law* presented. None of the Circuits have ruled upon the question * * *" (Emphasis added)

Later in the case of Northcross v. Board of Education of City of Memphis, (C.A. 6, 1964) 333 F.2d 661, at p. 667, the Court said:

"It should be first determined if there is teacher segregation and, if so, whether it is a violation of the appellant's constitutional rights."

Since the two decisions relied upon by defendants, the United States Supreme Court has rendered the decisions in Bradley v. School Board of City of Richmond, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187, and Rogers v. Paul, 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265. In *Bradley* certiorari was granted for the purpose of deciding whether it was proper to approve school desegregation plans without considering at a full evidentiary hearing the impact on those plans of faculty allocation on an alleged racial basis. The Court held that it was not, stating:

"There is no merit to the suggestion that the relation between faculty allocation on an alleged racial basis and the adequacy of the desegregation plans is entirely speculative. Nor can we perceive any reason for postponing these hearings: Each plan had been in operation for at least one academic year; these suits had been pending for several years, and more than a decade has passed since we directed desegregation of public school facilities 'with all deliberate speed,' Brown v. Board of Education [347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873] * * *"

In the *Rogers* case the lower court had held that students not attending integrated schools had no standing to challenge alleged racial assignments of faculty members. The Supreme Court held this view to be erroneous and said:

"Two theories would give students not yet in desegregated grades sufficient interest to challenge racial allocation of the faculty: (1) that racial allocation of faculty denies them equality of educational opportunity without regard to segregation of pupils; and (2) that it renders inadequate an otherwise constitutional pupil desegregation plan soon to be applied to their grades. See Bradley v. School Board, supra. Petitioner plainly had standing to challenge racial allocation of faculty under the first theory * * *"

It appears that every reported federal decision upon the topic since *Bradley* has taken the view that *Bradley* implies that allocation of faculty upon a racial basis is unconstitutional per se, that is, without the necessity for proof of adverse effects upon the quality of education. In Wheeler v. Durham City Board of Education, (C.A.4, 1966) 363 F.2d 738, at p. 740, the Court of Appeals for the Fourth Circuit said:

"The *locus standi* of pupils and parents to question faculty assignments was conclusively declared in Bradley v. School Board (citation omitted). We read that decision as authority for the proposition that removal of race considerations from faculty selec-

tion and allocation is, as a matter of law, an inseparable and indispensable command within the abolition of pupil segregation in public schools as pronounced in Brown v. Board of Education (citation omitted). Hence, no proof of the relationship between faculty allocation and pupil assignment was required here. The only factual issue is whether or not race was a factor entering into the employment and placement of teachers."

Likewise in the case of Smith v. Board of Education of Morrilton School District No. 32, (C.A.8, 1966) 365 F.2d 770, at p. 778, it was said:

"It is our firm conclusion that the reach of the Brown decisions, although they specifically concerned only pupil desegregation, clearly extends to the proscription of the employment and assignment of public school teachers on a racial basis (citations omitted). This is particularly evident from the Supreme Court's positive indications that nondiscriminatory allocation of faculty is indispensable to the validity of a desegregation plan. Bradley v. School Board, supra; Rogers v. Paul, supra. This court has already said, 'Such discrimination [failure to integrate the teaching staff] is proscribed by Brown and also the Civil Rights Act of 1964 and the regulations promulgated thereunder'. Kemp v. Beasley, supra, 8 Cir., p. 22 of 352 F.2d 14."

In the course of a voluminous opinion in United States v. Jefferson County Board of Education, (C.A.5, 1967) 372 F.2d 836, it was held that faculty integration is essential to student desegregation and that the opinion of the Supreme Court in Brown v. Board of Education, (1955) 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, demands faculty integration. Judge Michie of the Eastern District of Virginia held in Kier v. County School Board of Augusta County, Virginia, (E.D.Va., 1966) 249 F.Supp. 239, 246:

"I have concluded, however, that where the plaintiffs have shown the existence of segregated faculties the necessity of proof of actual adverse effects on Negro children flowing therefrom is obviated. While the Supreme Court has not specifically so held, I believe such a rule is fairly implied in the court's statement that there is no merit in the contention that the relation between faculty segregation and the adequacy of a desegregation plan is 'entirely speculative'. Bradley v. School Board * * * * "

In a decision entered upon July 21, 1967, our own Court of Appeals has reached the same conclusion. Monroe v. Board of Commissioners of City of Jackson, Tennessee, 380 F.2d 955. In that case the district judge heard evidence upon the question of faculty desegregation and concluded that the plaintiffs' proof was insufficient to entitle them to an order requiring integration of faculties and principals. He did, however, attack the policy of assignments of faculty solely upon the basis of dominant race and entered an order providing a basis for voluntary assignment of faculty members to schools dominated by another race. In holding this order insufficient to require adequate faculty desegregation and remanding the case, the Court said:

"Whatever Bradley's clear language, we cannot read it otherwise than as forbidding laissez faire handling of faculty desegregation. It implies that the accomplishment of that goal cannot be reached through the free choice of the teachers and that the Board must exercise its authority in making faculty assignments so as to assist in bringing to fruition the predicted benefits of school desegregation."

In the face of these authorities the Court cannot conclude but that assignment of teachers upon a racial basis to maintain segregated faculties is unconstitutional without the necessity of proof that racial allocation has an adverse effect upon the quality of education. To this effect see also Singleton v. Jackson Municipal Separate School District, (C.A.5, 1966) 355 F.2d 865;

Kemp v. Beasley, (C.A.8, 1965) 352 F.2d 14; Board of Public Instruction of Duval County, Florida v. Braxton, (C.A.5, 1964) 326 F.2d 616; Clark v. Board of Education of Little Rock School District, (C.A.8, 1966) 369 F.2d 661; Board of Education of Oklahoma City Public Schools v. Dowell, (C.A.10, 1967) 375 F.2d 158; Wall v. Stanly County Board of Education, (M.D.N.C., 1966) 259 F.Supp. 238 (action by discharged teacher to compel re-employment); Wright v. County School Board of Greensville County, Virginia, (E.D. Va., 1966) 252 F.Supp. 378; Thompson v. County School Board of Hanover County, Virginia, (E.D.Va., 1966) 252 F.Supp. 546; Brown v. County School Board of Frederick County, Virginia, (E.D.Va., 1965) 245 F.Supp. 549; Miller v. School District No. 2, Clarendon County, S.C., (D.C.S.C., 1966) 256 F. Supp. 370. See also Franklin v. County School Board of Giles County, Virginia, (C.A.4, 1966) 360 F.2d 325, wherein Negro teachers had been discharged after the integration of white schools and the abandonment of public schools and wherein defendants conceded the unconstitutionality of racial discrimination with respect to the employment of teachers, in reliance upon *Bradley*.

■ The decisions of the Supreme Court, the Circuit Courts of Appeals and other District Courts reviewed hereinabove show clearly that, as a matter of federal constitutional law: (1) school boards may not assign faculty and staff personnel on the basis of race to maintain segregated faculties or staffs and (2) provision for faculty and staff desegregation is an essential part of any school desegregation plan. Accordingly, no factual issue may be asserted in this lawsuit as to these matters. The previous record in this case contains references to the existence of the practice by defendants of assigning faculty and staff members on the basis of race. The defendants maintain that they have never been called upon to plead admission or denial that they follow the practice of assigning faculty or staff personnel upon the basis of race or color. In the present state of the record this appears true. The Court is of the opinion that orderly pleading requires that defendants be given an opportunity to plead as they may see fit to plaintiffs' allegation hereinabove quoted to the extent that such pleadings do not seek to raise issues resolved in this memorandum.

■ In other words, the Court is of the opinion that it should first be determined whether or not the defendants admit or deny that they follow the practice of assigning faculty or staff members of a particular race to schools dominated by that race. If the defendants should deny that they follow this practice, then it would appear that a hearing should be had upon that issue. Upon the other hand, should the defendants admit that they follow such practice, then it appears to the Court that the defendants should be directed to submit a plan for the desegregation of faculty and staff, and should plaintiffs challenge the adequacy of such plan, that the parties should proceed to a hearing upon that issue.

An order will accordingly enter allowing the defendants twenty (20) days to further plead in the cause. To the extent that such pleadings raise issues not otherwise resolved in this memorandum, the case will proceed in due order to the disposition of such issues. Should the defendants' pleadings raise no issues other than those herein resolved, the Court will, upon the filing of such pleading, expect to enter a further order calling upon the defendants to submit a plan for desegregation of teachers and principals within a time to be designated in the order.

An order will accordingly enter at this time allowing the defendants twenty (20) days within which to further plead herein.