Kay Frances BELL et al., Plaintiffs,

v.

SCHOOL BOARD OF the CITY OF STAUNTON, VIRGINIA, et al., Defendants.

No. 65–C–6–H.

United States District Court
W. D. Virginia,
Harrisonburg Division.

Jan. 5, 1966.

See also D.C., 249 F.Supp. 239.

Nabrit, III, New York City, for plaintiffs.

W. B. Timberlake, Jr., Timberlake, Smith & Thomas, Staunton, Va., Henry T. Wickham, Tucker, Mays, Moore & Reed, Richmond, Va., for defendants.

MICHIE, District Judge.

This school integration suit, brought as a class action on behalf of Negro school children in the City of Staunton, Virginia, by their parents and next friends, is in a sense a companion case to the Augusta County case decided by the Court this day. 249 F.Supp. 239. The plaintiffs in this cause filed a complaint against the defendant school authorities in Staunton identical to the complaint filed by the plaintiffs in Augusta County. At the time of the hearing in the matter the City of Staunton, like Augusta County, had filed a plan with the Court calling for the desegregation of four grades a year under freedom of choice, commencing at the start of the current school year and reaching completion by the beginning of the 1967–68 school term. As the same legal questions were presented in the two causes, they were brought on for hearing on the same day.

The City of Staunton is geographically surrounded by Augusta County, but the City constitutes a separate, independent political entity under Virginia law. The City accordingly operates its own public school system apart from the Augusta County system. Staunton presently operates seven elementary schools, one junior high school, and two high schools.[1] Two of these elementary schools and one high school are attended solely by Negro students and staffed exclusively by Negro teachers and administrators. They may thus be classified as "Negro schools."

The total school population of Staunton is between 4500 and 4600 students. Of these, 600 (approximately 13 percent) are

S. W. Tucker, Tucker & Marsh, Richmond, Va., Jack Greenberg, James M.

1. The line of classification for schools in Staunton is indistinct. Thus both the junior high school and most of the elementary schools house a sixth grade. The all-Negro Booker T. Washington High School is perhaps a misnomer. It houses first, second, and seventh grade classes and two special mentally retarded classes as well as the eighth through the twelfth grades.

Negroes. Prior to the current school year, only about 41 Negro students had attended predominantly white schools. In the current school year, however, 192 Negro students, or slightly under one-third of the total Negro school population, elected to attend predominantly white schools.

Unlike Augusta County, Staunton has not progressed beyond the mandatory freedom of choice plan for four grades in the current school year. As the plan now stands, four more grades would be desegregated for the 1966–67 school term, but the remaining four grades would not be desegregated until 1967–68. This plan has now been approved by the Department of Health, Education and Welfare, upon Staunton's advising the Department that it had decided to abandon all its Negro schools in 1967–68 and assign all its students to the remaining schools in the system on a unitary geographic basis. By letter from counsel for the defendants on November 23, 1965, this Court was similarly advised.

 In so declaring their intent the school authorities of the City of Staunton are to be highly commended. The switch to a geographic plan evidences a forthright and laudable approach to the problem of desegregation with which they are confronted. While I have approved the principle of freedom of choice under constitutional standards, I cannot help but conclude that a simple geographic plan has far more merit from an administrative point of view where a relatively small Negro population creates few practical problems in desegregating. At the same time, in an area like Staunton where Negro and white citizens are spread throughout the community, there will be no problem of a practically all-Negro zone under a geographic plan. The use of a system of assignments based on geographic zones would thus appear to fulfill the spirit as well as the letter of the Fourteenth Amendment.

 However, the delay in bringing about the geographic plan can not be allowed to deprive Negro students of basic rights in the interim. As stated, the geographic plan would go into effect at the beginning of the 1967–68 school term. Since Staunton intends to retain the four-grades-a-year plan under freedom of choice for 1966–67, the result will be a delay of an additional year in totally eliminating discrimination. The students in the four grades not placed on a mandatory freedom of choice plan next year would be allowed, under the plan, to apply for transfers to predominantly white schools. However, if these students, or their parents, do not take the initiative by requesting a transfer they will be re-assigned to a Negro school. White students, on the other hand, will be routinely re-assigned to a predominantly white school. The result, for these four grades next year, is the existence of a dual school system with rights of transfer superimposed, subject to overcrowded conditions in the transferee school. The initial assignment is discriminatory, and the elimination of discrimination from initial assignments is a condition of approval of a freedom of choice plan. Bradley v. School Bd., 345 F.2d 310, 319 (4th Cir. 1965), vacated and remanded on other grounds, 86 S.Ct. 224 (U.S. Nov. 15, 1965); Buckner v. County School Bd., 332 F.2d 452 (4th Cir. 1964). The plan for 1966–67 as it now stands does not meet the requirements of the Fourteenth Amendment, and I have concluded that there is no justification for delay on administrative grounds. Evidence of overcrowding in the predominantly white schools was presented at the hearing [2], but this is not unusual in public schools. The burden rests with the defendants to produce evidence of administrative obstacles to the elimination of discrimination in the schools, e. g., Watson v. City of Memphis, 373 U.S. 526, 533, 83 S.Ct. 1314, 10 L.Ed. 2d 529 (1963), and, from the record, I

---

2. In order to absorb all Negro students into the white schools under a geographic plan in 1967–68, Staunton will construct new facilities to replace the abandoned Negro schools.

find no showing of overcrowding so severe as to persuade me to allow the school authorities to delay in adopting complete freedom of choice in Staunton for the 1966–67 school term.

 Insofar as the question of teacher assignments is concerned, the observations made in the Augusta County case are equally applicable here. Faculty and administrative staff integration must be brought about. However, on the particular facts of this case I find justification for allowing the City of Staunton some leeway in reaching complete integration. Unquestionably the re-assignment of Negro teachers to predominantly white schools, and vice versa, is one of the most difficult aspects of desegregation. Where, as here, direct discrimination in pupil assignments is eliminated, and where complete integration on a geographic plan is foreseeable at the end of an additional year, I believe the school authorities are entitled to the Court's indulgence in teacher and staff assignments. One-third of the Negro students in Staunton are already in white schools, and mandatory freedom of choice was utilized for only four of the twelve grades in the school system in the current school year. There is apparently no hesitancy on the part of the Negro community to exercise their prerogatives under freedom of choice. Further, the Negro schools in Staunton are being phased out of the school program and I can see no substantial benefit to be derived from forcing the School Board to place white teachers in those schools for a one year period. The difficulties created by such an order would far outweigh its merits. Accordingly, I will order the integration of faculty and staff by the beginning of the 1967–68 school term. In the interim (for 1966–67), the order will provide that any Negro teachers, no longer needed in the Negro schools because of the decrease in enrollment at those facilities as freedom of choice is extended, be considered for employment in the predominantly white schools on the same non-discriminatory basis as white teachers now employed by the school system. See Franklin v. County School Bd., 242 F.Supp. 371 (W.D.Va.1965) (Appeal pending).

I have examined the prayers for relief in the complaint and find, on the evidence presented to the Court, that the plaintiffs are entitled to none of the additional relief demanded therein at this time. Insofar as any question presented by this cause is not discussed in this opinion, reference is hereby made to the companion Augusta County case for the discussion therein. Specifically, the requirements to be imposed under freedom of choice in Staunton will be identical to those stated in the Augusta County case, and the order in this cause will so provide.

The Court will retain jurisdiction of the cause, placing it on the inactive docket. The cause may be reinstated on the active docket without the payment of any filing fee in the event that any of the plaintiffs or anyone who would have had a right to intervene in the cause had it remained on the active docket shall file a petition for reinstatement and/or intervention stating a claim which would have given such petitioner a right to reopen the cause or intervene had it remained on the active docket.

Upon implementation of the defendants' final unitary geographic plan in the fall of 1967, they will be entitled to dissolution of the injunction contained in the order and final dismissal of the cause.

This opinion and the findings and authorities set forth as herein stated and the companion Augusta County case and its findings and authorities will be treated as findings of fact and conclusions of law. An appropriate order will be entered and filed in accordance with the rationale of this opinion.