Irvin T. BETTS and Thomas Betts et al.,
Plaintiffs,

v.

COUNTY SCHOOL BOARD OF HALI-
FAX COUNTY, VIRGINIA et al.,
Defendants.

No. 65-C-7-D.

United States District Court
W. D. Virginia,
Danville Division.

May 9, 1967.

S. W. Tucker, Henry L. Marsh, III, Tucker & Marsh, Richmond, Va., for plaintiffs.

Frederick T. Gray, Williams, Mullen & Christian, Richmond, Va., Don P. Bagwell, Tuck, Bagwell, Dillard & Mapp, Halifax, Va., for defendants.

## OPINION

MICHIE, District Judge.

Plaintiffs are Negro students enrolled in the Halifax County school system. In May of 1965 plaintiffs, for themselves, and in behalf of those similarly situated instituted this class action against the School Board of Halifax County and the other named defendants. Alleging that the School Board continues to operate a bi-racial school system with separate facilities to accommodate the students of each race, and separately staffed by personnel of each race, the plaintiffs seek an injunction requiring the defendants to institute a plan of desegregation which will not only provide for the prompt and efficient elimination of the segregation of pupils but will eliminate discrimination with respect to administrative personnel, teachers, clerical, custodial and other employees. Plaintiffs also request that the county be enjoined from proceeding with the construction of new schools in such a manner as to perpetuate racial segregation; and, finally, that they be awarded costs and counsel fees.

Defendants filed a motion to dismiss the complaint on the ground that, prior to the institution of the suit, a plan of desegregation meeting both constitutional requirements and the requirements of the Department of Health, Education and Welfare had been instituted. I denied the motion to dismiss under the theory that Bradley v. School Board of City of Richmond, et al., 345 F.2d 310 (4th Cir. 1965) required that at the very least an evidentiary hearing should be held at which the plaintiffs would be given a chance to produce evidence in support of their claims. Two such hearings have been held, one in November, 1965, and the other in October, 1966.

The defendants have now moved for summary judgment. The material facts are not contested. The dispute is purely one of law; that is, whether the plan of desegregation with the subsequent amendments promulgated by defendants is constitutionally sufficient. I find that it is, and therefore, grant defendants' motion for summary judgment.

Halifax County is predominantly rural with a total population of approximately 34,000. It is located in south central Virginia, its southern boundary forming part of the Virginia-North Carolina state line. The county has a school age population of approximately 9,500, of which about 4,900 are Negroes and 4,600 are whites.

The County School Board operates only elementary schools with grades one through seven. A joint Board of Control, a body independent of the Halifax County School Board, operates two high

schools which accommodate the secondary school students of both Halifax County and the City of South Boston. The scope of this action is limited to those schools which the County School Board itself controls, that is, the elementary schools. For the school year 1965–66 there were 34 elementary schools in operation. The construction of a 22-room Clay's Mill School and a 17-room Meadville School and a 4-room addition to the present Sinai Elementary School allowed the abandonment of 23 obsolete and rudimentary structures and reduced the number of elementary schools in operation to 14 as of the beginning of the 1966–67 school year.

Prior to May, 1965, initial assignment of pupils to schools was made on the basis of attendance areas. While assignments to a school of their choice was allowed, at least within the elementary schools, it was in practical effect never exercised. Although two Negro students did apply to and were admitted into the white high school in the Fall of 1964, no real integration had taken place prior to the commencement of the 1965–66 session.

Defendants concede that prior to May of 1965 they were operating a bi-racial system of schools. Some 95 white teachers staffed the schools attended by the white children. Approximately 103 Negro teachers were employed at Negro schools. Negro bus drivers canvassed the county transporting Negro children to Negro schools. White bus drivers covered the same territory transporting the white children to their schools. While the school authorities were of the opinion that both Negroes and whites in the county were aware that they had a freedom of choice, prior to May of 1965 no general statement of policy affording a freedom of choice had been made.

During March and April of 1965 the defendant School Board attempted to comply with the directives of the Department of Health, Education & Welfare promulgated pursuant to Title VI of the Civil Rights Act of 1964. After consultation with a representative of the Department, the Board executed a desegregation plan which was subsequently accepted by the Office of Education. In April of 1966 the School Board amended its plan to provide for staff desegregation in accordance with the guides set forth in my opinion in Brown v. County School Board of Frederick County, 245 F.Supp. 549 (W.D.Va.1965).

The plan of desegregation as it now stands is set forth below:

## HALIFAX COUNTY

*Desegregation Plans and Policies—Freedom of Choice*

The Halifax County School Board, operating under the Freedom of Choice Plan as described in the general statement of policies under Title VI of the Civil Rights Act of 1964, proposes the following plan for the desegregation of the Halifax County Schools.

1. Beginning with session 1965–66 all pupils attending the public schools in Halifax County (grades 1 through 12) will be given a complete Freedom of Choice as to the school in which they wish to be enrolled without regard to race, color, or national origin, except those pupils who are to be enrolled in the grades indicated at the following schools:

| | |
|---|---|
| Clay's Mill (2–7) | Meadville (2–7) |
| Clover #1 (2–7) | Mt. Laurel (2–7) |
| Clover #2 (2–7) | Mt. Road (2–7) |
| Cross Roads (2–7) | Piney Grove (2–7) |
| County Line (2–6) | Rosa (2–7) |
| Elkhorn (2–7) | Scottsburg (2–7) |
| Haskins (2–5) | Staunton River (2–6) |
| Lennig (2–6) | |

Pupils enrolled in the grades and schools listed above will be given a complete Freedom of Choice at the beginning of the 1966–67 term at which time construction of the following new elementary schools is scheduled to be completed: Clay's Mill (22 rooms); Meadville (17 rooms); and Sinai (4-room addition).

2. All pupils transferring or moving into a school area and enrolling in the county schools for the first time will be given a choice as to the school in which they will be assigned without regard to race, color, or national origin. All assignments will be made by the Halifax County School Board.

3. Should the exercise of the Freedom of Choice outlined in 1 and 2 above result in the overcrowding of any particular school, preference will be given to those living nearest the school. Any students rejected because of overcrowding will be given a choice of another school without regard to race, color, or national origin.

4. Under this plan, the Halifax County School Board and its employees, will take such steps as necessary to assure that no pupil or employee of the Halifax County School Board shall on the basis of race, color, or national origin be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity under the control of the School Board.

5. Notice of this plan will be made through the local press and by notice to parents and pupils. The enclosed Form A, NOTICE TO PRESS, will be published in the Gazette-Virginian on Thursday, May 20 and Thursday, May 27 and in the Record-Advertiser on Thursday, May 20 and Thursday, May 27 and the South Boston News on Tuesday, May 25 and Tuesday, June 1. Form B, NOTIFICATION TO PUPILS AND PARENTS OR GUARDIANS, will be distributed to all parents through the schools. . Form C, INITIAL REGISTRATION FORM, will be available to all parents at the time of registration. Form D, REGISTRATION FORM, will be available to parents at any school and at the School Board Office.

*Transportation and School Buses*

We propose the following plan for the operation of school buses:

All pupils attending a given school will be assigned to the buses serving this school without regard to race, color, or national origin.

*Teachers and Staff*

1. All administrative and in-service meetings will be conducted on a desegregated basis and without regard to race, color, or national origin.

2. Teachers, supervisors, and administrators being assigned positions in this county will be subject to State and local requirements for certification and will be evaluated in terms of their over-all preparation and qualifications for the position desired. Race, color, or national origin shall not be considered in evaluating qualifications in the assignment of teachers and staff members.

Form A—page 1

## HALIFAX COUNTY SCHOOLS
## NOTICE TO PRESS

Beginning with Session 1965–66, the Halifax County School Board acting in compliance with Title VI of the Civil Rights Act of 1964 will operate on a Freedom of Choice Plan in assigning pupils to schools and sets forth herewith the necessary information to parents to implement this plan. This plan applies to all grades, one through twelve except those pupils who are to be enrolled in the grades indicated at the following schools: Clay's Mill (2–7); Clover #1 (2–7); Clover #2 (2–7); Cross Roads (2–7); County Line (2–6); Elkhorn (2–7); Haskins (2–5); Lennig (2–6); Meadville (2–7); Mt. Laurel (2–7); Mt. Road (2–7); Piney Grove (2–7); Rosa (2–7); Scottsburg (2–7); Staunton River (2–6). Pupils enrolled in the grades and schools listed above will be given a complete freedom of choice at the beginning

of the 1966–67 term at which time construction of the following new elementary schools is scheduled to be completed: Clay's Mill (22 rooms); Meadville (17 rooms); and Sinai (4-room addition). Bus transportation will be provided on a non-discriminatory basis and in a way that will not jeopardize this freedom of choice.

Parents or guardians planning to enroll pupils in the first grade in any school in Halifax County for the fall Session 1965–66 may register pupils at the school of their choice between the dates 10:00 A.M., June 2, 1965 and 4:00 P.M. June 8, 1965 except Saturday, June 5 and Sunday, June 6. On each of these days, registration will be between the hours of 10:00 A.M. and 4:00 P.M. Under this policy adopted by Halifax County School Board, parents or guardians may register their children at any school operated in Halifax County without regard to race, color, or national origin.

Children whose parents move into the county after the registration period may register in the school of their choice or at the School Board Office within 10 days after moving into the county, but first preference in assignment will be given to those who register during the first registration period.

In the event of overcrowding of any particular school because of this Freedom of Choice, preference will be given to those pupils living nearest the school. Any pupil rejected in any particular school because of overcrowding will be given an opportunity to choose another school without regard to race, color, or national origin.

Parents and guardians should exercise this right of Freedom of Choice in registering their children without pressure or undue influence and without fear of reprisals. School personnel shall not attempt to influence parents or pupils in this choice and shall neither favor nor penalize children because of the choice made.

Notification to Pupils and Parents or Guardians and a registration form will be distributed to pupils on June 2, 1965. These forms must be taken home to the parent or guardian who must complete and sign this form and return it to the pupil's school on or before 4:00 P.M., June 8, 1965.

Parents or guardians of pupils entering the Halifax County Schools for the first time either in the first grade or by transfer from outside the county must secure copies of the Notification to Pupils and Parents or Guardians and, registration forms from any school or from the School Board Office. These forms must be completed and returned to the school or to the School Board Office on or before 4:00 P.M., June 8, 1965, or within ten days after moving to the county.

Form B—page 1

## HALIFAX COUNTY SCHOOLS

### NOTIFICATION TO PUPILS AND PARENTS OR GUARDIANS

The Halifax County School Board will, at the beginning of session 1965–66, operate under the Freedom of Choice Plan as described in the General Statement of Policies under Title VI of the Civil Rights Act of 1964 regarding the assignment of pupils in elementary and secondary schools. This Freedom of Choice will extend to all pupils, grades one through twelve, except those pupils who are to be enrolled in the grades indicated at the following schools: Clay's Mill (2–7); Clover #1 (2–7); Clover #2 (2–7); Cross Roads (2–7); County Line (2–6); Elkhorn (2–7); Haskins (2–5); Lennig (2–6); Meadville (2–7); Mt. Laurel (2–7); Mt. Road (2–7); Piney Grove (2–7); Rosa (2–7); Scottsburg (2–7); and Staunton River (2–6). Pupils enrolled in the grades and schools listed above will be given a complete Freedom of Choice at the beginning of the 1966–67 term at which time construction of the following new elementary schools is scheduled to be completed: Clay's Mill (22 rooms); Meadville (17 rooms); and Sinai (4-room addition).

Under this policy, pupils and parents or guardians of children who will enroll

for the first time in grade one, or who will transfer into the county, or who wish to transfer to a different school from the one now attended, may select the school of their choice without regard to race, color, or national origin.

If, because of overcrowding, it is not possible to assign a pupil to a particular school of his choice, preference in assignment will be given to those living nearest the school. Any pupil rejected because of overcrowding will be notified and will be given a choice of other schools without regard to race, color, or national origin. Under this policy, pupils may register at the school of their choice from 10:00 A.M., June 2, 1965, to 4:00 P.M., June 8, 1965, except Saturday, June 5 and Sunday, June 6. Registration will be from 10:00 A.M. to 4:00 P.M. each day during this period.

Pupils wishing to transfer from the school they are now attending to another school in Halifax County for Session 1965–66 may secure forms for such transfer from any school or from the School Board Office.

HALIFAX COUNTY SCHOOL BOARD AMENDMENTS TO STATEMENT OF POLICIES AND PLANS FOR COMPLIANCE UNDER TITLE VI OF CIVIL RIGHTS ACT of 1964

The attached amendments to plan heretofore in effect have been duly adopted and are in effect as of April 15, 1966.

BE IT RESOLVED: That the Halifax County School Board hereby adopts the following policies with reference to the schools under its control, to-wit:

1. When vacancies occur in the future in teaching positions in the schools operated by this board, they will be offered without regard to race, color or national origin, and to the end that such may be effectuated, whenever such vacancies occur, notice of the vacancies and of the opportunity for employment therefor shall be advertised generally and notice thereof shall be posted publicly and prominently in all of the schools so operated.

2. In filling such vacancies, no teacher will be employed unless he or she indicates a willingness to teach in a desegregated position.

3. Earnest effort will be immediately exerted to effectuate arrangements for the placing of at least one Negro on the faculty of every formerly white school, and at least one white person on the faculty of every formerly colored school by the beginning of the next school session, which will begin in September 1966.

4. For the Negro faculty members who are selected to enter the formerly white schools and for the white faculty members selected to enter the formerly Negro schools, as aforesaid, an in-service training program will be conducted beginning prior to September 1966 with the purpose of enabling them to meet the challenges and problems of transition and so that they may be better enabled to contribute to the progress of public education in their new positions.

5. In the future, generally and so long as need therefor appears to exist, an in-service training program will be offered to all teachers of all races in order to enhance their ability to adjust to new challenges brought about by desegregation, and in order to promote the educational progress and general welfare of all students of all races.

The foregoing resolution was adopted by the Halifax County School Board at a meeting of said board held on March 21, 1966.

REGISTRATION PERIOD

Choice of school form shall be mailed to the parent or guardian of every child enrolled in the system on April 1 in each year. A period of thirty days shall be permitted for the exercise of said choice. Choice of school may be effected by completing the form and returning it to any school in the system or to the office of the Superintendent by mail or by hand on or before April 30.

 A cursory reading of the plan is sufficient to show that it is of the type

commonly referred to as "Freedom of Choice". Within this category have been grouped several types of plans which differ in the degree to which they meet constitutional requirements. In this circuit neither a racial minority transfer provision nor a system of free transfers superimposed upon initial assignments on the basis of race meet the requirements of the Fourteenth Amendment. Dillard v. School Board of City of Charlottesville, 308 F.2d 920 (4th Cir. 1962); Buckner v. County School Board of Greene County, 332 F.2d 452 (4th Cir. 1964). However, where the initial assignment is on the basis of geographic zoning without regard to race a superimposed system of free transfers is proper. Dodson v. School Board of City of Charlottesville, 289 F.2d 439 (4th Cir. 1961). Furthermore, a system of initial assignments on the basis of free choice followed by the annual right to exercise a choice as the student moves from one level to the next has been approved. Bradley v. School Board of the City of Richmond, 345 F.2d (4th Cir. 1965). Under this last type of plan it is possible to provide either for a permissive or a mandatory annual exercise of choice. A mandatory annual choice satisfies a more strict interpretation of the requirements of the Fourteenth Amendment. Wright v. County School Board of Greenville County, 252 F.Supp. 378 (E.D.Va. 1966).

Here, as in the Greenville County, Frederick County, Augusta County and City of Staunton cases,[1] plaintiffs have chosen to make a frontal assault upon the principle of freedom of choice. The plaintiffs rely, as they have before, upon the asserted theory that the Constitution not only prohibits discrimination but also requires desegregation. Urging that freedom of choice is not really free, they would have me read Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) to place an affirmative duty to achieve desegregation on the individual school boards.[2]

█ In this circuit it has repeatedly been held that "A system of free transfer is an acceptable device for achieving a legal desegregation of schools." Bradley v. School Bd. of City of Richmond, 345 F.2d 310, 318–319 (4th Cir. 1965). In *Bradley* the Court of Appeals developed in detail the principles upon which its holding was based. I, also, undertook an exhaustive explanation of the constitutionality of freedom of choice in my opinions in the Frederick County and Augusta County cases. I need not restate it here. The Court of Appeals has recently reaffirmed its position that, while the onus rests upon the school board to produce an acceptable plan of desegregation, the board need not assure that integration actually takes place. In Swann v. Charlotte-Mecklenburg Board of Education, 369 F.2d 29, at p. 32 (4th Cir. 1966) the court said:

> Whatever the Board may do in response to its own initiative or that of the community, we have held that there is no constitutional requirement that it act with a conscious purpose of achieving the maximum mixture of races in the school population.

1. Wright v. School Bd. of Greenville County, 252 F.Supp. 378 (E.D.Va.1966); Brown v. School Bd. of Frederick County, 245 F.Supp. 549 (W.D.Va.1965); Kier v. School Bd. of Augusta County, 249 F.Supp. 239 (W.D.Va.1966); Bell v. School Bd. of City of Staunton, 249 F. Supp. 249 (W.D.Va.1966).

2. Plaintiffs are not without support from other sources. See Title VI, The Guidelines and School Desegregation in the South, 53 Va.L.Rev. 42 where the author urges that affirmative action is necessary to overcome the discrimination of the past. Also, the guidelines themselves appear to adopt the affirmative duty approach by requiring certain percentages of desegregation to occur in systems operating under a freedom of choice plan. Furthermore, the 5th Circuit in the very recent case of United States v. Jefferson County Board of Education, 380 F.2d 385 (5th Cir. Dec. 29, 1966) has stated: "*The only school desegregation plan that meets constitutional standards is one that works.*" [Emphasis in original.]

While freedom of choice plans are not in themselves invalid, they may, however, be shown to be invalid if the "freedom of choice" is illusory. Realizing the inertia and the resistance to change which the desegregation of the past has caused, the plans have been meticulously examined to determine whether factors such as the overcrowding of schools and the availability of bus transportation effectively limit the freedom of choice. Foremost among the requirements set by this court to assure effective freedom of choice is that substantial integration of the faculties and other administrative personnel in the schools must be effected so that the school board is not operating white schools and Negro schools but rather schools among which a freedom of choice may be exercised.

Where a freedom of choice plan has been used, the courts in this circuit and in others have generally relied upon Briggs v. Elliott, 132 F.Supp. 776 (E.D. S.C.1958) and have required only that the stage be set to allow as nearly as possible the exercise of a free choice.

On the other hand, the 1966 guidelines promulgated by the Department of Health, Education and Welfare, based upon the premise that the goal is an integration of the public schools rather than the elimination of state enforced segregation, evaluate the propriety of a freedom of choice plan from the standpoint of its results. As noted previously, the plan will not be approved by the Department unless a certain percentage of desegregation has been accomplished. If an adequate mixing is not achieved, the guidelines provide that a freedom of choice plan may be deemed insufficient and the plan will be rejected.

The guidelines are not, of course, binding on the courts. However, the Eighth Circuit has found their standards persuasive. Clark v. Bd. of Education of Little Rock, 369 F.2d 661 (8th Cir. 1966). The Fifth Circuit in a strong opinion by Judge Wisdom has held that the guidelines constitute minimum standards for judicial approval of a desegregation plan. United States v. Jefferson County Bd. of Education, 372 F.2d 836 (5th Cir. Dec. 29, 1966). I acknowledge the persuasiveness of the guidelines insofar as they establish certain prerequisites for a freedom of choice plan, but I reject the concept that the constitutionality of such a plan must depend upon a certain degree of integration having been achieved. Implicit in the recent holding of the Fifth Circuit in the *Jefferson County* case is a concept of the requirements of Brown v. Bd. of Education which is contrary to the established law in this circuit and which, consequently, I do not adopt.

While I reject the idea that school officials must act affirmatively to bring about integration, I emphasize that they must act fairly in opposition to discrimination.

Turning to a consideration of the contents of the plan, it is clear that the Halifax County School Board has adopted a policy of complete freedom of choice in assignments. To best assure that the choice will not be illusory, it has been my position that the plan must afford an annual mandatory choice. Bell v. School Bd. of the City of Staunton, 249 F.Supp. 249 (W.D.Va.1966). It is not entirely clear from this plan whether the annual choice is permissive or mandatory. The text of the plan itself indicates that the choice is to be permissive. However, both the annual and the initial registration forms provide that the parent or guardian must fill in the form, thus exercising a choice, and the parent or guardian is requested to return the form by a certain date.[3] Since

---

3. The initial registration form reads in pertinent part:
Under policies adopted by the Halifax County School Board * * * it is necessary that all pupils who will enter Halifax County schools for the first time furnish the following information. [Follows a request for enrollment in

I do not believe this is a sufficient directive requiring an annual choice, and as the plan makes no provision for assignment in the absence of a choice, I suggest that the board include in its plan a statement to the effect that

> pupils and their parents or guardians are required to exercise initially and annually their choice of schools and no pupils will be admitted or readmitted to any school until such a choice has been made.

 The remainder of the plan insofar as it relates to the assignment of pupils on the basis of freedom of choice is constitutionally sufficient. As of the commencement of the present session an annual freedom of choice was and is in the future to be allowed to all students both white and Negro in every class in the entire county system. Initial assignments will also be made on the basis of freedom of choice and will be without regard to race, color or national origin. The pledge in the plan to the effect that there will be no segregation or discrimination in services, facilities, activities, or other programs is sufficient. The provision in the plan with regard to non-discriminatory bussing and transportation facilities is proper. It is also quite proper that, in the event of any overcrowding of any particular school, preference will be given to those living nearest the school and that any students rejected because of overcrowding will, without regard to race, be allowed to exercise another choice. Also, the board has properly provided a period of thirty days within which the choice may be effected ending no later than the 30th of April of each school year. Prior to that time choice of school forms are to

be mailed to the parents or guardian of every eligible child. No annual publication is contemplated, but public notification of the annual choice period is not a constitutional prerequisite to the sufficiency of a plan.

 Essential to any plan are provisions for faculty and staff desegregation.[4] The Court of Appeals has recently emphasized in Wheeler v. Durham City Board of Education, 363 F.2d 738, at p. 740 (4th Cir. 1966):

> The locus standi of pupils and parents to question faculty assignments was conclusively declared in Bradley v. School Board, supra, 382 U.S. 103, 86 S.Ct. 224 [15 L.Ed.2d 187 (1965)]. We read the decision as authority for the proposition that removal of race considerations from faculty selection and allocation is, as a matter of law, an inseparable and indispensible command within the abolition of pupil segregation in public schools as pronounced in Brown v. Board of Education, supra, 347 U.S. 483, 74 S.Ct. 686.

The duty is upon the school board to act affirmatively through assignments of faculty and staff to achieve this integration. Wright v. County School Bd. of Greenville County, 252 F.Supp. 378 (1966); Kier v. County School Bd. of Augusta County, 249 F.Supp. 239 (W.D. Va.1966).

The pledges of the board with regard to faculty and staff desegregation were contained in its April, 1966, amendment to the plan. This portion of the plan which has been set out earlier may be summarized briefly. When faculty and staff vacancies occur in the future, they are to be offered to applicants without

---

which the choice of a school is provided] * * *

The annual registration form reads in part:

> In accordance with enrollment policies adopted by the Halifax County School Board as described in the Notification to Pupils and Parents or Guardians of Halifax County Schools, the parent or guardian must fill in the following form: [Follows a request for enroll-

ment in which the choice of a school is provided] * * *

4. Not to be included within this group are clerical, custodial and other school personnel who do not directly serve or work with the pupils. I do not believe students have standing to question the assignment of those with whom they have no contact. Mapp v. Bd. of Education, 319 F.2d 571, 576 (6th Cir. 1963).

regard to race. Notice of such vacancies will be advertised generally. No teacher is to be employed unless he or she indicates a willingness to teach in a desegregated position. A special in-service training program is to be conducted for those who have not before been employed in a desegregated position. All regular in-service training programs are to be offered equally to those of each race and integrated faculty and staff meetings are to continue. The board further pledged that insofar as possible it would attempt to place on the faculty of each school under its control at least one faculty member of the race opposite to that which was in the majority at that particular school.

The board has carried out its pledge to make an immediate attempt at the faculty integration and has placed at least one faculty member in a desegregated position in every school but one. Twenty out of a total of 217 elementary school teachers are in desegregated positions. While this is a substantial beginning in view of the past operation of the Halifax County schools, conspicuously absent from the board's plan is a statement of the goal to be attained. A statement of such a goal is found in the Greenville plan approved by Judge Butzner on May 13, 1966 which is as follows:

> The School Board adopts as its goal that the pattern of assignment of teachers and other professional staff among the various schools in its system may not be such that schools are identifiable as intended for students of a particular race, color or national origin. * * *

As I stated in Kier v. County School Bd. of Augusta County, Virginia, 249 F.Supp. 239 (W.D.Va.1966) at p. 247, this goal will be achieved when:

> Insofar as possible, the percentage of Negro teachers in each school in the system approximates the percentage of the Negro teachers in the entire system for [that] * * * session.

The Halifax County plan should contain a pledge by the school officials that they will work toward this end.

I recognize the factual differences existing between the Halifax County situation and that which existed in Augusta County. In Augusta County, the percentage of Negroes and therefore Negro teachers in the system was much smaller and the goal I suggested was easily achieved. Here, while the same guideline should apply, I would not be surprised if, under the circumstances, attainment of the goal will take longer.

Achievement of faculty and staff integration will, of course, require affirmative action on the part of the school board. There can be no complete freedom of choice allowed teachers. However, I do not believe that the affirmative action necessary to achieve faculty integration requires the involuntary reassignment of teachers presently holding positions within the system.

In Wheeler v. Durham City Board of Education, 363 F.2d 738 (4th Cir. 1966), the Court of Appeals confronted this issue. It said at p. 741:

> In the absence of the teachers as parties to this proceeding, we do not think that the order should require any involuntary assignment or reassignment of a teacher. Vacant teacher positions in the future, as the plaintiffs suggest, should be open to all applicants, and each filled by the best qualified applicant regardless of race. Moreover, the order should encourage transfers at the next session by present members of the faculty to schools in which pupils are wholly or predominantly of a race other than such teachers'. A number of the faculty members have expressed a willingness to do so. Combined with the employment of new teachers regardless of race, this procedure will within a reasonable time effect the desegregation of the faculty.

The school board may allow this statement by the Court of Appeals to serve as a guide to the procedures it must follow. While involuntary assignments are not required, it may be necessary for the board to attempt persuasion.

Normal attrition within the faculty will undoubtedly leave several vacancies each year. If these are properly filled without regard to race with persons who will teach in desegregated positions, reasonable progress toward the goal set forth above may be expected each year. Twenty teachers were placed in desegregated positions at the start of this session. Balancing the probability that the pool of those at the time willing to teach in desegregated positions has been depleted by this initial action against the fact that each year the inertia opposing faculty integration should become less, it seems reasonable that the school system should have an additional twenty teachers in desegregated positions each year. Integration of staff, administrative and other professional personnel must, of course, proceed concurrently with faculty integration.

■ Plaintiffs have requested that new school construction be enjoined because they feel that it has been, and will be, undertaken with the intent of continuing segregation. The school board has a responsibility to plan school construction so as not to inhibit integration and this court has the power to intervene if the board acts in disregard of this responsibility. Wheeler v. Durham City Board of Education, 346 F.2d 768, 774 (4th Cir. 1965). However, where the school system is badly in need of construction to replace primitive and rudimentary structures, as is the case here, I am reluctant to act in the absence of specific evidence that the construction was conceived along racial lines, and will continue to have racial impact. See Wright v. County School Bd. of Greenville County, 252 F.Supp. 378 (E.D. Va.1966).

■ A review of the evidence presented on this issue causes me to conclude that the school construction in progress will not in and of itself perpetuate segregation. Two new schools were opened in time for the 1966–67 session. Additional new construction is to follow. In both of the new schools which opened in 1966, some faculty integration had taken place and the choice to attend each of them was open to all pupils in the county. There has been nothing to indicate that this will not be true also in the case of future construction and consequently an injunction will not issue. Nevertheless, it is strongly recommended that the school board incorporate in its plan a pledge with regard to school construction which may in substance be as follows:

The program for construction of new schools or additions to existing schools will not be designed to perpetuate, maintain or support racial segregation.

■ Plaintiffs have requested that defendants be required to pay their attorney fees. This is not a case of deliberate intransigence and foot-dragging on the part of the school board. Prior to the institution of this suit free transfers were permitted and efforts to negotiate a plan with the Office of Education had already commenced. This case concerns only the constitutional sufficiency of an existing desegregation plan which the plaintiffs attack primarily on the ground that freedom of choice is *per se* unconstitutional. Under the circumstances, an award of fees is not justified. Bradley v. School Bd. of the City of Richmond, 345 F.2d 310, 321 (4th Cir. 1965).

The plan of desegregation submitted by the Halifax County School Board is not the most artfully drawn. While its basis, freedom of choice, is constitutionally sufficient, I have concluded that its provisions require fortification in the several particulars that have been indicated. However, even with the inclusion of the suggested additions, the plan will only be as good as the extent to which school officials in good faith implement its pledges. Due to this subjective factor courts have often felt it necessary to exercise continuing supervision.

■■ I am mindful of this court's duty not to abdicate after only a paper compliance by the school board. Brooks v. County School Bd. of Arlington

County, 324 F.2d 303 (4th Cir. 1963). However, here, where substantial progress under a definite plan has been made and where cooperation rather than intransigence has characterized the attitude of the school board, I find that it is proper to grant defendants' motion for summary judgment upon the condition that within 60 days they submit evidence that the plan has been amended in the suggested particulars. Upon receipt by this court within 60 days from the date of this opinion of notice that the recommended changes have been made, this suit will be dismissed.

■■■■■ Entry by the Office of Education of the Department of Health, Education and Welfare into the field will not allow this court to abdicate its responsibility. The ability of a district court through the use of its equity powers to shape its decrees to the particular problems of each school system cannot be replaced by the uniform requirements of the guidelines. In Halifax County a plan has been adopted which this court has found to be constitutionally sufficient and which, when amended, will as nearly as practicable be adapted to the conditions which exist there. However, in deciding that it is unnecessary for this court to exercise continuing supervision, I have been influenced by the presence of the Office of Education, the efforts of which will be directed toward seeing that the plan is fairly administered.

It is hoped and expected by the court that the progress made to date was not the result of the imminence of a court order, but rather was the result of an effort on the part of the school board earnestly to carry out its pledges. It is expected that good faith will keynote future efforts with consequent substantial future progress. In the event that this expectation is proven false, upon a showing that the school board is improperly administering the plan, plaintiffs may, without the payment of a filing fee, apply to this court for relief.

An order will be entered in accordance with this opinion.